## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Criminal Action No. 2018-0018** |
| **JAMES LEALAND JOHNSTON aka** | ) | |
| **JJ ROCKS,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

**Attorneys:**
**Rhonda Williams-Henry, Esq.,**
St. Croix, U.S.V.I.
        *For the United States*

**Ronald E. Russell, Esq.,**
St. Croix, U.S.V.I.
        *For Defendant*

## <u>MEMORANDUM OPINION</u>

**Lewis, District Judge**

        THIS MATTER comes before the Court on Defendant James Lealand Johnston's ("Defendant") "Motion to Suppress Evidence Seized from Defendant's Residence without a Valid Search Warrant" (Dkt. No. 122) and "Amended Motion to Suppress Evidence Seized from Defendant's Residence without a Valid Search Warrant" (Dkt. No. 127) (collectively "Motion to Suppress"), the Government's Opposition thereto (Dkt. No. 132), Defendant's Supplement (Dkt. No. 136), the Government's Opposition to Defendant's Supplement (Dkt. No. 137), and the evidence presented by the parties at the evidentiary hearing held on November 10, 2021. Additionally, before the Court is Defendant's "Motion for Reconsideration" (Dkt. No. 142), the Government's Opposition thereto (Dkt. No. 147), and Defendant's "Motion for Oral Argument"

(Dkt. No. 149). For the reasons that follow, the Court will deny Defendant's Motion to Suppress, Motion for Reconsideration, and Motion for Oral Argument.

## I.    BACKGROUND

On November 15, 2018, the Government filed a one-count Indictment against Defendant charging him with possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). (Dkt. No. 37).

Defendant filed the instant Motion to Suppress on July 16, 2021 and filed the amended Motion on July 23, 2021. (Dkt. Nos. 122, 127).[1] In his Motion to Suppress,[2] Defendant argues that law enforcement searched his house on May 1, 2017, and seized several items, but no search warrant was ever produced to Defendant. (Dkt. No. 127 at 1). Thus, Defendant now argues that "the warrantless search of his residence was invalid and items seized pursuant to this illegal search must be suppressed." *Id.*

The Court set an evidentiary hearing on Defendant's Motion to Suppress for November 10, 2021. (Dkt. No. 135). The day before the scheduled hearing, Defendant filed his "Motion to Exclude Any Testimony from Sergent [sic] Alexander Moorhead" ("Motion to Exclude") (Dkt. No. 138). In the Motion to Exclude, Defendant argued that the testimony of one of the

---

[1] Defendant's Motion to Suppress was filed on July 16, 2021. (Dkt. No. 122). The Clerk's Office issued a notice of corrected docket entry and instructed Defendant to refile only Defendant's statement attached to the Motion to Suppress. Defendant then filed his "Amended Motion to Suppress Evidence Seized from Defendant's Residence without a Valid Search Warrant" on July 23, 2021 with the corrected statement attached. (Dkt. No. 127).

[2] The instant Motion to Suppress is Defendant's second Motion to Suppress. The Court previously granted Defendant's "Motion to Suppress Statement." (Dkt. Nos. 78, 79). The previous Motion to Suppress dealt with statements given by Defendant at an interview at the police station after the search of his residence and his arrest. (Dkt. No. 79 at 2-4). The Court found that Defendant was not properly advised of his full *Miranda* rights and suppressed the statements. *Id.* at 7, 11.

Government's witnesses, Sergeant Alexander Moorhead of the Virgin Islands Police Department ("VIPD"), should be excluded because Judge Jomo Meade of the Superior Court of the Virgin Islands ("Superior Court") issued an opinion in a separate matter wherein Judge Meade found that Sergeant Moorhead's testimony was not credible. *Id.* at 1. Specifically, in response to Sergeant Moorhead's testimony that he detected the odor of marijuana emanating from a vehicle which provided probable cause to search the vehicle (Dkt. No. 138-1 at ¶ 13), Judge Meade stated:

> While Sgt. Moorhead testified that his training and experience enables him to detect the smell of marijuana, the People provided no evidence that Sgt. Moorhead has any specialized form of training or natural attributes which would enable him, while standing outside the cab of a truck, to smell marijuana that was inside a zip-loc bag, wrapped in a shopping bag, placed inside a backpack that was in the cabin of the truck.

*Id.* at ¶ 14. Additionally, Judge Meade considered the testimony of another government witness who stated that he did not smell the odor of marijuana through the window of the vehicle. *Id.* Thus, Judge Meade concluded that "the smell of marijuana which the People claim as the basis of probable cause, appears to be a pretext to conduct a search." *Id.*

The Court denied the Motion to Exclude from the bench at the evidentiary hearing held on November 10, 2021 and permitted Sergeant Moorhead to testify. Thereafter, Defendant filed his Motion for Reconsideration, wherein he again moved to exclude the testimony of Sergeant Moorhead—from both the suppression hearing and the trial in this matter—on the basis that Sergeant Moorhead's testimony is contradicted by a police report dated May 1, 2017, and his credibility is called into question by the prior adverse credibility finding by Judge Meade. (Dkt. No. 142). The Government then filed its Opposition to Defendant's Motion for Reconsideration. (Dkt. No. 147).

At the suppression hearing, the Government presented the testimony of Sergeant Alexander Moorhead and VIPD Detective Darius George. Defendant testified on his own behalf. The following facts emerged from the record established at the suppression hearing.[3]

Sergeant Moorhead testified that he received a complaint on March 25, 2017, and on March 26th, he met with the complainant and took the complainant's statement. Based on the statement, Sergeant Moorhead prepared an affidavit to apply for an arrest warrant and a search warrant. Sergeant Moorhead testified that the applications were granted by a magistrate judge of the Superior Court, who ultimately issued an arrest warrant for Defendant, a search warrant for Defendant's residence, and a search warrant for the vehicle that Defendant operates, based on probable cause that there might be evidence of the crime of Unlawful Sexual Contact in the First Degree. (Govt. Exs. 1, 2, 3).

Sergeant Moorhead testified that the warrants were executed on May 1, 2017. He stated that the search commenced in the morning. When he arrived at the residence—approximately five to ten minutes after the search began—he exited his vehicle and entered the residence. He stated further that when he entered, the door to the residence was already open, other officers were already inside, and Defendant was sitting handcuffed on the couch. Sergeant Moorhead testified that he did not conduct the search himself; rather, the search was conducted by other members of the VIPD and Homeland Security Investigations ("HSI").

Sergeant Moorhead further described the sequence of events by stating that his copies of the search and arrest warrants were inside his police vehicle. According to Sergeant Moorhead,

---

[3] The Court bases the background factual discussion in this section on the record established at the suppression hearing. The Court provides this information solely for the purposes of this pretrial motion, ever mindful that Defendant is presumed innocent until proven guilty. Most of the facts discussed herein are alleged, but at this stage not conceded or proven beyond a reasonable doubt to the factfinder.

Defendant asked him why law enforcement was present and inquired about the search warrant. Sergeant Moorhead responded, "were you not already provided with the documents, sir?" to which Defendant answered "no." Sergeant Moorhead then went to his vehicle to retrieve his copy of the warrants.

When Sergeant Moorhead returned to the house, he provided the documents to Defendant. Because Defendant's hands were cuffed in front of his body, Sergeant Moorhead initially held the documents for Defendant to read. However, Defendant had difficulty reading them; therefore, Sergeant Moorhead gave him the documents so he could hold them himself.

Sergeant Moorhead testified that Defendant was asking a lot of questions to understand what was going on, but the atmosphere was not tense or aggressive. After the search concluded, Defendant was presented with Sergeant Moorhead's copy of the arrest warrant and was arrested inside his residence. Defendant was then transported to police headquarters.

The Government's second witness was Detective Darius George. Detective George testified that he works for the VIPD's Forensic Unit and that he participated in the search of Defendant's residence on May 1, 2017. Detective George testified that prior to the search of the house, law enforcement set up a perimeter and an entry team knocked on the door. He stated that they knocked for a while before the door was opened and the entry team spoke with someone at the door. Detective George was not at the door, but rather, in a vehicle. After the entry team spoke to the person at the door of the residence, Detective George was given a signal to come forward and photograph the exterior and interior of the residence prior to the commencement of the search. Detective George testified that Sergeant Moorhead was not present as a member of the entry team.

Finally, Defendant testified on his own behalf, stating that on May 1, 2017, he heard a loud knock at his door very early in the morning. He opened the first door to his residence and Sergeant

Moorhead was standing at the second screen door. According to Defendant, Sergeant Moorhead told him he had a warrant for his arrest, and he pushed the screen door open, pushed Defendant onto the couch, and handcuffed him. Defendant testified that three or four people entered the house after Sergeant Moorhead with video cameras. Defendant further testified that he asked Sergeant Moorhead for the warrant. Sergeant Moorhead then called out the window asking for the warrant, and someone yelled "it's on its way." Defendant states that Sergeant Moorhead did not give him a copy of the arrest or search warrants and did not tell him why he was being arrested.

## II.    DISCUSSION

### A.  Motion for Reconsideration

#### 1.  Applicable Legal Principles

In order to prevail on a motion for reconsideration, the moving party must show "'(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct clear error of law or fact or to prevent manifest injustice.'" *Butler v. Pa. Bd. of Probation & Parole*, 613 F. App'x 119, 125 (3d Cir. 2015) (quoting *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)); *see also* LRCi 7.3.

#### 2.  Analysis

In his Motion for Reconsideration, Defendant argues that:

> Sergeant Alexander Moorhead demonstrated in the Superior Court before the Honorable Superior Court Judge Jomo Meade that he openly violated Rule 603 of the Federal Rules of Evidence. This rule requires an oath or affirmation to testify truthfully. The memorandum opinion order of Superior Court Judge Jomo Meade dated October 26, 2021, demonstrates that Sergeant Moorhead is unable to comply with testifying truthfully. . . . Therefore, to allow Sergeant Moorhead to testify in this suppression hearing would severely prejudice defendant and violate the sanctity of Fed. R. Evid 603.

(Dkt. No. 142 at 3-4).

At a suppression hearing, the Court, as the trier of fact, is responsible for determining the credibility of witnesses. *See United States v. Richardson*, 501 F. Supp. 2d 724, 734 (W.D. Pa. 2007) ("[A]t a hearing on a motion to suppress, the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." (internal citations and quotation marks omitted)); *United States v. Woodson*, No. 2:15-cr-00088, 2017 U.S. Dist. LEXIS 506, at *4 (W.D. Pa. Jan. 4, 2017) ("At a suppression hearing, the court, as the finder of fact, determines the credibility of witnesses and may accept or reject any or all of a witness' testimony." (citing *United States v. Howard*, 787 F. Supp. 2d 330, 331-32 (D.N.J. 2011))). Similarly, at a jury trial, the jury—as the trier of fact—makes credibility determinations. *See United States v. John-Baptiste*, 747 F.3d 186, 208 (3d Cir. 2014) ("[T]hat conflicting testimony only raised a credibility issue that the jury was free to resolve."); *United States v. Richardson*, 658 F.3d 333, 337 (3d Cir. 2011) ("[I]t is the jury's province . . . to make credibility determinations and to assign weight to the evidence.").

Defendant has not presented—and the Court is unaware of—any support for the proposition that a Court may exclude a witness's testimony in its entirety from a suppression hearing or a trial due to a prior adverse credibility finding in a separate matter. Indeed, rather than permitting the wholesale exclusion of a witness's testimony, the Federal Rules of Evidence explicitly provide that prior instances of conduct related to a witness's character for truthfulness may, in the Court's discretion, be inquired into on cross-examination, although introduction of extrinsic evidence is not permitted. *See* Fed. R. Evid. 608(b) ("[E]xtrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of: (1) the

witness . . .”); *see also United States v. Trant*, 924 F.3d 83, 91 (3d Cir. 2019) (“Under [Rule 608(b)], the District Court had the discretion to allow [the defendant] on cross examination to question [the witness] about specific instances of conduct if they were probative of his character for truthfulness or untruthfulness.”); *United States v. Williams*, 464 F.3d 443, 448 (3d Cir. 2006) (“The court may at its discretion permit questioning about specific instances of conduct on cross-examination, but only if the conduct is probative of the witness’s character for truthfulness or untruthfulness.”).

The Court finds that the authorities upon which Defendant relies do not support his position that Sergeant Moorhead’s testimony should be excluded—either from the suppression hearing or trial.

Defendant cites *Phillips v. United States*, 849 F.3d 988 (11th Cir. 2017), wherein the Eleventh Circuit granted habeas relief on a count based on the perjured testimony of a government witness. The Court stated that “[a] defendant’s right to due process is violated when ‘the prosecution’s case includes perjured testimony and . . . the prosecution knew, or should have known, of the perjury’” because “[t]his is a violation under *Giglio v. United States*, 405 U.S. 150 (1972).” *Phillips*, 849 F.3d at 992-93 (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)). Along these same lines, Defendant cites the Seventh Circuit’s case of *Anderson v. City of Rockford*, 932 F.3d 494 (7th Cir. 2019), wherein the Court discussed whether police officers had violated *Brady v. Maryland*, 373 U.S. 83 (1963).

Under *Brady*, due process requires that the Government disclose evidence favorable to the defendant that is material either to guilt or punishment. *United States v. Moreno*, 727 F.3d 255, 262 (3d Cir. 2013) (citing *Brady*, 373 U.S. at 87). Further, the Supreme Court in *Giglio v. United States*, 405 U.S. 150 (1971), explained that *Brady* requirements include an obligation that the

8

Government disclose any *impeachment* information that it possesses regarding its own witnesses, such as promises for leniency made in return for testimony. "Such disclosure is required when the reliability of that witness bears heavily on a criminal defendant's guilt or innocence." *Felix v. Gov't of Virgin Islands*, 47 V.I. 573, 583 (D.V.I. App. Div. 2005).

Neither case cited by Defendant supports the proposition that the Court should exclude the testimony of Sergeant Moorhead. Rather, assuming that Judge Meade's opinion evaluating Sergeant Moorhead's testimony is *Giglio* material, *Brady/Giglio* dictates only that the prosecution *disclose* such material as it "might affect the *jury's judgment of the credibility* of a crucial prosecution witness." *United States v. Friedman*, 658 F.3d 342, 357 (3d Cir. 2011) (emphasis added). The impeachment evidence at issue was disclosed by the Assistant U.S. Attorney prior to the suppression hearing—as acknowledged by both parties' counsel at the hearing. Indeed, defense counsel questioned Sergeant Moorhead about Judge Meade's opinion, and the Court—as the trier of fact—is charged with evaluating Sergeant Moorhead's testimony as well as all other evidence presented at the suppression hearing. Thus, there is nothing about the *Phillips* or *Anderson* cases upon which Defendant relies that supports the proposition that Sergeant Moorhead's testimony should be excluded.

Defendant also cites *Latino v. Kaizer*, 58 F.3d 310 (7th Cir. 1995), in which the Seventh Circuit reversed a district judge's decision to overturn a jury verdict in a civil suit. Specifically, the Seventh Circuit found that the court erred when the judge found that the police officer's testimony was perjured and should not have provided a basis for the jury's decision. *Id.* at 315-17. The Seventh Circuit commented that:

> The district judge can take away from the jury testimony that reasonable persons could not believe. *United States v. Kuzniar*, 881 F.2d 466, 471 (7th Cir. 1989). However, that exception is a narrow one, and can be invoked only where the testimony contradicts indisputable physical facts or laws. *Id.*; *see also id.* at 471

fn.1 ("Testimony which does not contradict the physical laws of nature cannot be shielded from the jury.").

*Id.* This principle also fails to support Defendant's argument because Defendant has cited to no testimony by Sergeant Moorhead—and there is none—that fits within the narrow exception for testimony that contradicts the laws of nature.

Defendant also argues that Sergeant Moorhead's testimony should be excluded because the testimony he gave at the suppression hearing is contradicted by the police report from May 1, 2017, that was attached to the Government's supplemental brief filed in connection with the first suppression hearing in this matter. (Dkt. No. 142 at 1). Even assuming that there was some contradiction between Sergeant Moorhead's testimony and the police report—a proposition with which this Court disagrees[4]—this, again, would be an issue of credibility for the trier of fact, not grounds for excluding the testimony. *See John-Baptiste*, 747 F.3d at 208-09; *United States v. Dees*, 574 F. App'x 179, 182 (3d Cir. 2014) ("All of Dees's assertions concern matters that are within the exclusive province of the jury. It was for the jury to assess the credibility of McFeaters and Smith, and to assign such weight to their testimony as the jury collectively determined such testimony deserved.").

Defendant has not met his burden to show an intervening change in the controlling law, the availability of new evidence that was not available when the Court first denied his motion, or the need to correct clear error of law or fact or to prevent manifest injustice that would justify the Court revisiting its prior ruling in this matter. As the Court previously found, Defendant has presented no basis upon which to prohibit Sergeant Moorhead from testifying at the suppression

---

[4] The Court notes that Defendant did not seek to question Sergeant Moorhead about these alleged inconsistencies at the suppression hearing—despite ample opportunity to do so.

hearing or at the trial in this matter. Thus, the Court will deny Defendant's Motion for Reconsideration.

### B. Motion to Suppress

#### 1. Applicable Legal Principles

The Fourth Amendment protects individuals from "unreasonable searches" in their homes. U.S. Const. amend. IV. A search occurs when the government (1) physically intrudes on constitutionally protected areas or (2) invades an expectation of privacy that society recognizes as a reasonable expectation. *See Florida v. Jardines*, 569 U.S. 1, 5 (2013); *Kyllo v. United States*, 533 U.S. 27, 33 (2001). "Warrantless searches and seizures are presumptively unreasonable and are therefore prohibited under the Fourth Amendment, unless an exception applies." *United States v. Mundy*, 621 F.3d 283, 287 (3d Cir. 2010) (citing *California v. Acevedo*, 500 U.S. 565, 580 (1991)). "It is axiomatic that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. White*, 748 F.3d 507, 510-11 (3d Cir. 2014) (quoting *Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984)) (internal quotation marks omitted). "Hence, the Fourth Amendment draws 'a firm line at the entrance to the house.'" *Id.* at 511 (quoting *Payton v. New York*, 445 U.S. 573, 590 (1980)). "A search of a house without a warrant issued on probable cause is generally unreasonable." *Id.*; *see also Payton*, 445 U.S. at 586 ("It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." (internal quotation marks omitted)). Evidence obtained as a result of an unreasonable search and seizure is inadmissible at trial and must be suppressed as "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

#### 2. Analysis

Defendant argues that because he was not presented with a search warrant, the search was illegal, and the evidence seized should be suppressed as fruit of the poisonous tree. (Dkt. No. 127

at 5). Additionally, in his Motion for Reconsideration, Defendant argues that there was no inventory of the property seized from Defendant's home. (Dkt. No. 142 at 5). The Government argues that even if the Court credits Defendant's testimony that he did not receive a copy of the warrant, he must show that he was prejudiced as a result. (Dkt. No. 147 at 5).

At the suppression hearing, the Government introduced an arrest warrant for Defendant and two search warrants—one for Defendant's residence and one for Defendant's vehicle. (Govt. Exs. 1, 2, 3). Defendant does not challenge the validity of the warrants. Thus, the issue here is not whether there was a valid warrant to search Defendant's home and vehicle, but whether the warrants were served properly, and if they were not, whether the Fourth Amendment was violated so as to require the suppression of evidence.

The evidence at the suppression hearing is in conflict. The Government's witness, Sergeant Moorhead, testified that he arrived at Defendant's residence five to ten minutes after the search began when Defendant was already detained, and subsequently gave Defendant copies of the search warrants. Defendant testified that he was never given copies of the warrants.

In view of the conflicting testimony, the Court is required to make credibility determinations. *United States v. Christian*, Criminal No. 2017-0017, 2018 U.S. Dist. LEXIS 23892, at *11 (D.V.I. Feb. 14, 2018) (citing *Richardson*, 501 F. Supp. 2d at 734)."The Court judges credibility by considering a number of factors, including the witness's demeanor and manner on the stand, his ability to accurately recollect the matters at hand, the manner in which he may be affected by the outcome, the extent to which his testimony is either supported or contradicted by other evidence and testimony in the case, and whether it withstands the 'common sense test.'" *United States v. Davis*, Criminal No. 2:13-cr-00068, 2014 U.S. Dist. LEXIS 48843, at *9-10 (W.D. Pa. Apr. 9, 2014) (citing *United States v. Murphy*, 402 F. Supp. 2d 561, 569 (W.D. Pa. 2005));

*United States v. Demings*, 787 F. Supp. 2d 320, 326 (D.N.J. 2011) (citing same). "[A] witness should not be considered any more or less credible because the witness is a law enforcement officer." *United States v. Graham*, Crim. Action No. 13-00626 (JLL), 2014 U.S. Dist. LEXIS 94043, at *12 (D.N.J. July 9, 2014) (citing *United States v. Bethancourt*, 65 F.3d 1074, 1080 (3d Cir. 1995)).

Here, the Court credits Sergeant Moorhead's testimony concerning service of the warrants. First, based on the Court's observation during the suppression hearing, Sergeant Moorhead's demeanor on the stand was calm and collected, recounting events in an organized and persuasive manner. Sergeant Moorhead remained unfazed even as defense counsel challenged his version of events. *See Murphy*, 402 F. Supp. 2d at 570-71 (finding defendant credible in part because "even upon vigorous and effective cross-examination by the [government], his version of the events of that evening never wavered").

Second, Sergeant Moorhead was able to recall the matter at hand in detail, demonstrating a clear and consistent recollection of events. *See Christian*, 2018 U.S. Dist. LEXIS 23892, at *12-13; *Cf. United States v. Jackson*, 560 F. Supp. 2d 331, 336-37 (D. Del. 2008) (finding the officers' testimonies during the suppression hearing not credible due to inconsistencies). Further, his depiction of events "withstands the common sense test." *Davis*, 2014 U.S. Dist. LEXIS 48843, at *10.

Third, other evidence from the hearing supports Sergeant Moorhead's testimony regarding the events of the day, while Defendant's testimony was contradicted by the other evidence presented at the suppression hearing, including his own sworn affidavit. Sergeant Moorhead testified that he arrived at Defendant's residence five to ten minutes after other officers had arrived, and at that time Defendant was detained while his residence was being searched. Sergeant

Moorhead then testified that Defendant was inquiring about the warrants, so Sergeant Moorhead retrieved copies of the documents from his car, and gave copies of the warrants to Defendant. In contrast to Sergeant Moorhead's testimony, Defendant testified that Sergeant Moorhead was a part of the entry team and upon Defendant answering his front door, Sergeant Moorhead pushed open the door, grabbed Defendant by his shirt, and pushed him on the couch. Defendant testified that he was not given any documents.

Sergeant Moorhead's testimony was corroborated by Detective George, who testified that Sergeant Moorhead was not present when the entry team was knocking on the door. Additionally, Defendant's testimony was further undermined by Detective George's testimony that he witnessed members of the entry team knock on the door of the residence and speak to someone on the other side for some time. He testified that the entry team did not immediately enter the residence upon the door being opened. Finally, Defendant stated in his affidavit attached to his Motion to Suppress that "[a]lthough [he] requested a search warrant, [he] was never presented with a search warrant instead [he] was shown an arrest warrant." (Dkt. No. 127-1 at ¶ 14). However, at the hearing Defendant testified that he was not given a copy of *any* warrant and that he was never told why he was arrested. Noting Defendant's contradictory version of events, the Court credits Officer Moorhead's corroborated testimony. *See United States v. Boyce*, Criminal No. 2014-00029, 2015 U.S. Dist. LEXIS 23129, at *25 (D.V.I. Feb. 26, 2015) (finding "defendant's selective memory and inconsistent testimony on salient points demonstrates his lack of credibility").

Based on the Court's consideration of the factors, discussed herein, the Court credits the testimony of Sergeant Moorhead and finds that Defendant was served with the warrants after Sergeant Moorhead arrived on the scene.

Defendant next argues that "[p]resentment of a warrant *before* execution is absolutely necessary for the search and seizure to be valid." (Dkt. No. 127 at 5 (emphasis added)). The Court disagrees.

The search warrants in this matter were issued by the Superior Court of the Virgin Islands on April 25, 2017 and executed on May 1, 2017. (Govt. Exs. 1, 2, 3). The evidence at the suppression hearing indicates that both local and federal officers were involved in the search of Defendant's residence. The law governing the execution of search warrants depends on whether a search is considered federal in character or whether it is a state undertaking. *See United States v. Golson*, 743 F.3d 44, 51-52 (3d Cir. 2014) (citing *United States v. Bedford*, 519 F.2d 650, 654 n.1 (3d Cir. 1975)); *see also United States v. Rickus*, 737 F.2d 360, 363-64 (3d Cir. 1984) ("[E]vidence obtained in accordance with federal law is admissible in federal court—even though it was obtained by state officers in violation of state law."); *United States v. Stiver*, 9 F.3d 298, 300 (3d Cir. 1993) (following *Rickus*); *United States v. Primo*, 223 F. App'x 187, 190 (3d Cir. 2007) (same). However, the Court need not decide whether this search was state or federal in nature because the Court finds that neither Rule 41 of the Federal Rules of Criminal Procedure—which was also the applicable rule for searches under Virgin Islands law in 2017[5]—nor the Fourth Amendment were violated.

---

[5] The Virgin Islands Rules of Criminal Procedure were adopted by the Supreme Court, and took effect, on December 1, 2017. *In re Adoption of the V.I. Rules of Crim. Procedure*, Promulgation No. 2017-010, 2017 V.I. Supreme LEXIS 68 (V.I. Oct. 16, 2017). Prior to their adoption, Rule 7 of the Superior Court Rules provided that "[i]n criminal cases, the nonsubstantive provisions of the Federal Rules of Criminal Procedure shall apply to the extent not inconsistent with Virgin Islands law, including the Rules of the Superior Court, rules promulgated by the Supreme Court, and any applicable Virgin Islands statutes and decisions of the Supreme Court." Additionally, 5 V.I.C. § 3901 provides that "(a) A search warrant authorized by this chapter may be issued by a judge of a court of record, directed to a peace officer [and] (b) Rule 41 of the Federal Rules of Criminal Procedure shall apply to proceedings under this chapter." *See also Nicholas v. People of the Virgin Islands*, 56 V.I. 718, 740 n.13 (2012) ("Rule 41 of the Federal Rules of Criminal

The Supreme Court has stated that "neither the Fourth Amendment nor Federal Rule of Criminal Procedure 41 imposes . . . a requirement" that "the executing officer must present the property owner with a copy of the warrant *before* conducting his search." *United States v. Grubbs*, 547 U.S. 90, 98-99 (2006) (emphasis added); *see also Groh v. Ramirez*, 540 U.S. 551, 562 n.5 (2004) ("[N]either the Fourth Amendment nor Rule 41 of the Federal Rules of Criminal Procedure requires the executing officer to serve the warrant on the owner before commencing the search."); *accord United States v. Wright*, 777 F.3d 635, 641 (3d Cir. 2015); *Hart v. Gordon*, 591 F. App'x 125, 128 (3d Cir. 2014). According to the Supreme Court, "[t]he Constitution protects property owners not by giving them license to engage the police in a debate over the basis for the warrant, but by interposing, *ex ante*, the 'deliberate, impartial judgment of a judicial officer . . . between the citizen and the police,' and by providing, *ex post,* a right to suppress evidence improperly obtained and a cause of action for damages." *Grubbs*, 547 U.S. at 99 (quoting *Wong Sun,* 371 U.S. at 481-82) (internal citation omitted).

The procedural requirements for the execution of a warrant are found in Federal Rule of Criminal Procedure 41 ("Rule 41"). Specifically, Rule 41(f)(1)(C) provides that "[t]he officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the

---

Procedure—which applies to searches in the Territory by virtue of Title 5, Section 3901 of the Virgin Islands Code—permits the issuance of warrants based on oral testimony and even by telephone."); *People of the Virgin Islands v. Turnbull*, 61 V.I. 46, 51 (V.I. Super. Ct. 2014) ("Under Virgin Islands law, the procedures for obtaining a search warrant are governed by Rule 41 of the Federal Rules of Criminal Procedure." (citing 5 V.I.C. § 3901(b)). The continuing applicability of this statute is now questionable in light of the new Virgin Islands Rules of Criminal Procedure adopted on December 1, 2017. *See People of the Virgin Islands v. Olive*, 70 V.I. 375, 385 (V.I. Super. Ct. 2019) ("5 V.I.C. § 3901 makes reference to the applicability of Rule 41 of the Federal Rules of Criminal Procedure to the warrant proceedings. In the Virgin Islands, that provision has been supplanted by Rule 41 of the Virgin Islands Rules of Criminal Procedure.").

person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property."[6]

The Third Circuit has consistently found that when violations of Rule 41 are ministerial—not constitutional—in nature, a violation of Rule 41 requires a showing of prejudice or that law enforcement deliberately disregarded the Rule in order to justify the suppression of evidence. *See United States v. Werdene*, 883 F.3d 204, 209-10 (3d Cir. 2018) ("If we do not find that a Fourth Amendment violation occurred, then the suppression motion must be denied unless Werdene can prove that he was prejudiced by the error or that the FBI acted with intentional and deliberate disregard for Rule 41."); *United States v. Martinez-Zayas*, 857 F.2d 122, 136 (3d Cir. 1988) ("[W]hen the Rule 41 violation is not of a constitutional magnitude, violations of Rule 41 alone should not lead to exclusion unless (1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule." (quoting *United States v. Burke*, 517 F.2d 377, 386-87 (2d Cir. 1975))).[7]

---

[6] Prior to 2002, the requirements regarding the execution of warrants were found in Rule 41(d). The relevant section of the Rule is essentially the same.

[7] Other Circuits have come to the same or a similar conclusion. *See, e.g.*, *United States v. Riesselman*, 646 F.3d 1072, 1078 (8th Cir. 2011) ("[E]ven if Rule 41 is violated, exclusion of evidence acquired during the search 'is required only if a defendant is prejudiced or if reckless disregard of proper procedure is evident.'" (quoting *United States v. Spencer*, 439 F.3d 905, 913 (8th Cir. 2006))); *United States v. Bonner*, 808 F.2d 864, 869 (1st Cir. 1986) ("Violations of Rule 41(d) are essentially ministerial in nature and a motion to suppress should be granted only when the defendant demonstrates legal prejudice" (internal quotation marks and citation omitted)); *United States v. Simons*, 206 F.3d 392, 403 (4th Cir. 2000) ("Non-constitutional violations of Rule 41 warrant suppression only when the defendant is prejudiced by the violation, or when there is evidence of intentional and deliberate disregard of a provision in the Rule." (internal citations and quotation marks omitted)); *United States v. Kelly*, 14 F.3d 1169, 1173 (7th Cir. 1994) ("Failure to comply with the procedural requirements of Rule 41(d), however, has generally not been held to constitute a deprivation of rights under the [F]ourth [A]mendment which requires exclusion of the seized evidence. A violation of Rule 41(d) can lead to exclusion, however, when there is a showing

Additionally, courts have found that failing to present a search warrant or to leave it at the residence is a *ministerial* violation of Rule 41. *See United States v. Everett*, 426 F. App'x 112, 115 (3d Cir. 2011) ("It is undisputed in this appeal that a violation of procedural rules (such as the failure to bring and present a copy of the search warrant at the time of the search) does not automatically trigger the exclusion of evidence. . . . [T]he District Court committed no reversible error here because, in the District Court's own words, the search warrant was issued by an 'impartial magistrate,' nothing but pure conjecture suggested that the agents' 'sloppiness in this instance rises to the level of bad-faith or intolerable conduct that is widespread,' and Everett 'has failed to demonstrate that he was prejudiced by his failure to receive a copy of the warrant at the time of the search.'"); *United States v. Durante*, 612 F. App'x 129, 131-32 (3d Cir. 2015) ("[T]he District Court did not err in determining that the failure to leave a complete copy of the search warrant that included all applicable attachments was a ministerial violation of Federal Rule of Criminal Procedure 41, not a constitutional violation.").[8]

---

of prejudice, or an intentional and deliberate disregard of the rule. (internal citation omitted)); *United States v. Burke*, 517 F.2d 377, 386-87 (2d Cir. 1975) ("[V]iolations of Rule 41 alone should not lead to exclusion unless (1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule.").

[8] Other courts have held similarly. *See Simons*, 206 F.3d at 403; *Frisby v. United States*, 79 F.3d 29, 32 (6th Cir. 1996) ("[W]e have held that although the procedural steps enumerated in Rule 41(d) are important and should not be disregarded, they are ministerial and '[a]bsent a showing of prejudice, irregularities in these procedures do not void an otherwise valid search.'" (quoting *United States v. McKenzie*, 446 F.2d 949, 954 (6th Cir. 1971))); *United States v. Thompson*, 263 F. App'x 374, 379 (4th Cir. 2008) ("'[T]here are two categories of Rule 41 violations: those involving constitutional violations, and all others.' Ministerial violations of Rule 41, such as failing to leave either a copy of the search warrant or a receipt of items seized, are non-constitutional." (quoting *Simons*, 206 F.3d at 403) (internal citation omitted)); *United States v. Christopher*, Criminal No. 2008-0023, 2009 WL 903764, at *5 (D.V.I. Mar. 31, 2009).

Thus, even if Defendant had shown that there had been a violation of Rule 41—which the Court determined he has not—he must otherwise show prejudice or deliberate violation of the Rule by police.

Prejudice in this context means that "the search might not have occurred or would not have been so abrasive if the Rule had been followed." *Werdene*, 883 F.3d at 213 (quoting *Martinez-Zayas*, 857 F.2d at 136); *see also United States v. Williamson*, 439 F.3d 1125, 1133 (9th Cir. 2006); *Wright*, 777 F.3d at 641 ("Even if the list of items to be seized had been present at the scene, the agents would have collected precisely the same evidence, and Wright would have been unable to stop them. The violation in this case had no impact on the evidence that could be deployed against Wright at trial."); *United States v. Pangburn*, 983 F.2d 449, 455 (2d Cir. 1993) ("[T]here was no prejudice to Salcido because the search of his storage locker would have taken place in exactly the same way if Rule 41 had been followed with regard to notice of the entry.").[9]

With regard to showing prejudice or deliberate or intentional disregard for Rule 41, Defendant argues that "[i]tems seized in the search severely prejudiced and prejudices [him] because exculpatory evidence was deliberately withheld from [Defendant], there was spoliation of evidence, and evidence was electronically altered or tampered with while in the custody and care of the local police and Moorhead." (Dkt. No. 142 at 2). Defendant also argues that he believes there was an "ulterior motive" for this action. (Dkt. No. 136 at 1). Defendant argues that his counsel

---

[9] Defendant argues that the Court improperly "placed the burden of showing prejudice" on Defendant. (Dkt. No. 142 at 4). The case law is clear that to justify suppression of evidence based on a ministerial violation of Rule 41, the *defendant* bears the burden of showing that he or she was prejudiced by such a violation. *See Werdene*, 883 F.3d at 209-10; *United States v. Primo*, 369 F. Supp. 2d 607, 635 (W.D. Pa. 2005) ("[Defendant] has failed to establish that he was prejudiced from the violations of . . . Fed.R.Crim.P. 41, such that a request to suppress the evidence obtained through the execution of valid search warrants is warranted."), *aff'd*, 223 F. App'x 187 (3d Cir. 2007).

subpoenaed several government agents on August 27, 2018, and then on August 29, 2018, those agents provided the affidavits that were the basis for the federal criminal charges. *Id.* at 2. The Government argues that whatever the motives were for initiating the case, those are independent of whether the Fourth Amendment was violated in the execution of the search. (Dkt. No. 137 at 2). In addition, the Government argues that Defendant has failed to show how he was prejudiced. (Dkt. No. 147 at 7).

The Court agrees with the Government. Defendant does not explain how his unsubstantiated allegations that the Government withheld and tampered with items *seized in the search* relate to the Government's alleged failure to provide a copy of the warrants to Defendant at the time of the search. In any event, there is no evidence of prejudice—in other words, that "the search might not have occurred or would not have been so abrasive" if the search warrants were provided to Defendant. *See Werdene*, 883 F.3d at 213. Nor is there any evidence that law enforcement acted with "intentional and deliberate disregard" of Rule 41. *Id.*

Otherwise, Defendant seemingly argues that the Government committed misconduct in initiating this prosecution. Defendant submitted several exhibits showing that he served subpoenas duces tecum on two agents and the Government refused to comply with them. (Dkt. No. 136-4). Defendant states that he "strongly believes that this action was filed because the subpoenas were issued." (Dkt. No. 136 at 2).

Defendant presents no evidence of Government misconduct. The exhibits on which Defendant relies simply show that the Government refused to comply with Defendant's subpoenas because "[f]ederal employees and Task Force Officers assigned to HSI are not authorized to comply with subpoenas duces tecum by Federal regulations, also known as *Touhy* regulations

20

codified at 6 C.F.R. §§ 5.41 *et seq.*" (Dkt. No. 136-4 at 1). Nothing suggests to the Court that such action was improper.

Moreover, there is nothing to suggest that the Government's seemingly legitimate objection to the subpoenas was related in any way to the execution of the search warrants in this matter. Defendant does not point to any evidence in the record to show that law enforcement intentionally violated the requirements of Rule 41, other than his allegedly "strong belief" that the action was filed because of the subpoenas that he issued. Defendant's supposition is wholly unsupported and has not been shown to have any connection whatsoever to the execution of the search warrants or the alleged failure to provide copies of the warrants to Defendant.[10]

In short, Defendant has failed to show that either the Fourth Amendment or Rule 41 of the Federal Rules of Criminal Procedure was violated in this matter because the Court credits the testimony of Sergeant Moorhead that copies of the search warrants were provided to Defendant.[11]

---

[10] Defendant has also filed a Motion for Oral Argument (Dkt. No. 149). The Court will deny Defendant's request for oral argument. The parties engaged in oral argument related to the Motion to Suppress at the hearing held on November 10, 2021, and the Court has determined that no additional argument is necessary or would be helpful to the Court's resolution of the issues raised.

[11] In his post-hearing Motion for Reconsideration, Defendant argues that "there is no evidence that Defendant, *or one other credible person*, has verif[ied] an inventory of the property seized from Defendant's home." (Dkt. No. 142 at 5). Defendant did not raise this issue prior to or at the suppression hearing and thus no evidence was elicited at the hearing that an inventory was or was not provided. Indeed, although Defendant testified on his own behalf, he did not assert that an inventory was lacking. Thus, Defendant has established no basis for suppressing evidence for this reason. Moreover, the failure to provide a timely inventory or to leave a receipt for property taken is a ministerial violation of Fed. R. Crim. P. 41 that requires a showing of prejudice or an intentional and deliberate disregard of the Rule in order to warrant suppression of evidence. *See Simons*, 206 F.3d at 402 ("Simons argues that the August search violated the Fourth Amendment and Federal Rule of Criminal Procedure 41(d) because the search team executing the warrant left neither a copy of the warrant nor a receipt for the property taken. We conclude that these failings did not violate Simons' constitutional rights, but we remand for the district court to determine whether the executors of the warrant deliberately violated Rule 41(d)."); *Christopher*, 2009 WL 903764, at *5 ("Courts have generally held that a failure to provide timely inventory notice does not require suppression unless (1) such failure has caused incurable prejudice to the defendant or

In any event, even assuming that a ministerial violation of Rule 41 has occurred in that such copies were not provided in accordance with Rule 41, Defendant has not shown that he was prejudiced or that law enforcement deliberately violated the procedural requirements of Rule 41. Thus, the Court concludes that Defendant's Motion to Suppress should be denied.

### III.   CONCLUSION

For the reasons discussed above, the Court will deny Defendant's Motion to Suppress, Motion for Reconsideration, and Motion for Oral Argument.

An appropriate Order accompanies this Memorandum Opinion.

Date:   July 27, 2022

_____/s/_____
WILMA A. LEWIS
District Judge

---

(2) there is substantial evidence that such failure was intentional and deliberate."). Defendant again has shown neither.